Good morning, Peter Johnson for Appellants. If it pleases the court, basically what I'd like to do today is, I think there's four overriding points or issues in this case that are significant and important to the court's determination here. The first one is, and a reason why it favors the reversal of the new trial and reinstating the initial verdict. The first one is that the jury in this case conducted a rational deliberation and dispositioned the case in their verdict. The second is that in this case, part of the reason for the verdict was the litigation decisions that were made by the defense in this case. And they made poor choices for litigation decisions. The third one is this court in this case put in its own personal perspective review regarding the value of the damages or the injuries in this case and replaced the juries with its own. And the last one is, is that for all intents and purposes, and I guess it would be a harmless error argument, the defense got what they wanted when it was all said and done. So going back through that. The defense, the last point completely eludes me. What do you mean the defense got what it wanted? In other words, defense made complaints about the evidence and basically what the whole defense argument was, that there should have been a court order that the jury should have had that said that in the detention hearing there was a finding of substantial risk of harm. And basically that's a prima facie standard, whatever. I'll get into that in a minute. But my point is they got in the fact that there was an order, that there were several orders, that the children were retained for over a year and a half, that they were at risk was what the basis of the order was, all those different things. But I'll get to that in a minute. I don't want to focus on that. Okay. So the first thing I'd like to do, and I think this is really the most important point, and the reason I think it's the most important point is because really what the judge did in this case was said, the jury was moved by some sort of passion and prejudice and awarded too much money. I mean, that's really what we're talking about. So — And what's wrong with that assessment? You have to pinpoint exactly the harm to be attributed to these defendants. And what the district court said, I thought pretty clearly, was that the jury awarded something that can't properly be the basis or isn't the injury they're supposed to award for. Well, I disagree with that point, and I'll get to that point. What I'd like to point out first is think about the jury deliberations. If you're saying the jury is moved by some sort of passion and prejudice, the deliberations, their verdict — What's the injury that the jury could properly award for? The jury could award for the, at a minimum, the compensatory damages for the denial of due process. Yeah. Well, that doesn't tell us very much. What are you really talking about? What's the hurt? And what you seem to be disregarding here is that the Court has said that these children were separated, this family was split up under California law with due process and everything else. So that can't be the injury for which these defendants are going to be made to pay. Well, what the Court really was saying, and I think that if you apply PIFAS strictly, this is where you get, is that there's a due process violation and there's separation. And they can be compensated for the due process violation, not just the mere fact of the damages. Focus basically what happened that day. Well, it's actually, it was two days, two days of conduct. And the nature of that conduct and the substantive right that's being involved here in the party's interest in taking these children, you know, a three-and-a-half-year-old autistic child and a 13-month-old breastfeeding child, and the way of the taking and the abuse of authority that's in it. I mean, there's, we're talking about very substantial constitutional rights. Let me, let me just then, you have actually separated it now, I think, like the judge did on further reflection, and that is, here's what you can get, which you're talking about, and then here's what you can't get, which has to do with the separation. But the first trial conflated the two, at least as I read and basically under Kerry, you can't get that second part. So why isn't it proper to go back and have an instruction that makes sure that we're focusing on what you're just now talking about? Well, for one thing, I'm not conceding in any way, shape, or form that in the first trial they gave separation damages. I don't think they did. We only put on evidence for two days of conduct. That's it. We put evidence on the two days of conduct the plaintiffs did in this case. In other words, That conduct included the separation. No. It included them coming to the house, taking the child. Sounds like separation to me. No. Separation. That's the due process violation. The separation is keeping the child away. That's the separation. Well, when you say you put on evidence about taking the child away, was the jury left with the impression and then they put him back in the house and that was it? Judge, there's no way you can absolutely separate the two. You're going to, your evidence is Well, isn't that the problem? If the jury is left with the impression that the real harm done to this family, it's a very substantial harm, is that they were split up and they awarded damages for that, and Kerry says, and I realize you're not conceding that, but Kerry seems to say that second part was going to happen anyway. You don't get damages for that. But we need to separate them. Kerry also says that based on the particular right at issue, that you have to tailor the damages because of the substantial interest there. Kerry says that. Kerry also says that just because common, that not every situation common law tort is going to apply in civil rights violations. So Kerry says that as well. Kerry, and in the Gomes case, who looked at, the Gomes case which was cited, Gomes v. Woods, who looked at Kerry, and it's the only one that's done it in this context, said that, you know what, you can have injuries that arise from the due process violation that are substantial. And all the evidence that we put on was what happened because the police, the police came and took their children. That's the evidence we put on. But the point I was making. Well, you bring up substantial, and I've got to say, in a case where there is no malice demonstrated or I think even suggested, the numbers in that first verdict are very high, and it's not hard for me to see how the judge looks at that and says, uh-oh, they're not awarding damages for what happened in that day or two for the due process violation. They're responding to what happened to the family. What's wrong with that kind of analysis? I disagree with the position that there's no ill intent. But we see lots of due process violations. We don't see a lot of awards of millions of dollars for those violations. Okay. So why isn't the district judge reasonably inferring that the jury was responding to something else? Well, okay, break down the verdict. Break it down. They have, you have a situation where the jury rationally divided it up into two incidents. They rationally divided up the percentages. The amounts of the awards were rationally divided and different. The position of the court is they must have, and he can't point to anything other than a number. They must have awarded for the entire level, the entire time of separation. If that's true, it was over a year and a half until they had their family back. And incidentally, this is the whole point I was making about the bad decisions regarding this litigation. The defense is the one that put that on. We didn't put it on. They put it on. In cross, they came up with this big idea that we're going to say how egregious all this injury is and then we're going to carve out a little piece of it for the short period of time from the due process. That was their big theory. And they pushed that. And words such as torture and extremely injury and terrible hardship for these people and the great harm, all those things came from the defense, not from the plaintiffs. So, you know, they introduced that into this litigation. We didn't. Now, getting back to the point I was making, the parents, $175,000. So if the theory is that the jury awarded them for a year and a half of their children being taken away from them and they got $175,000 in compensatory damages for that, that's excessive? There's nothing excessive about that, not even remotely. The jury awarded them money in this case because they knew the children were vulnerable, the children were young, the children, the right was the highest right in the family. That's why the jury awarded these dollars. And they saw with the children, yeah, they were the vulnerable victims here. So it's not, not only does the court not point to anything that occurred during this process that says the damages were by passion and prejudice other than a number, if you look at the numbers, the numbers are, it's a rational jury. The jury in this case didn't find deliberate indifference with the, with the, on the money. That means if it was passion and prejudice, why would they do it? We're not the jury, so we're not going to re-argue that. Let me just try to understand. Obviously the big difference from Trial 1 to Trial 2 was Carrie was on the table and then, of course, the damages awarded to the children. That's where there's, where I see the substantial difference. So if I'm hearing what you were just talking about, are you suggesting that at least the damages to the parents should have been sustained in the, after the first trial? If they didn't, you know, you're now making some distinction because you're saying this isn't all that much for the due process violation. No, no. First of all, I disagree with the characterization that the only reason that there The reality of it is, is that the life of the litigants in this case was sucked from them and the presentation of evidence and the fact that the other side had already had an opportunity to testify and they tailored their testimony in the second case and it lost the emotion. It lost the surprise. It lost all of that stuff. And that, and then the difference. How does that help you? It didn't help us. That's what I'm saying. But how does making the point to us help? Because if the first trial was defective, there's going to be a retrial. We don't say, well, the first trial was defective, but the presentation was more effective, so we're going to overlook the defect. That's not how it works. I don't. I'm answering the Court's question. I don't actually think that the second trial has anything to do with this, with this determination here. It's a total separate situation. You have to look at the first one as it is. You can't, you can't say, okay, this is what happened, and therefore, you know, hey, look, it must have been wrong because there was less money awarded in the second  trial. I was just following up on your point that this was, this did not really reflect, the $175,000 did not reflect some kind of going overboard by the jury because of what actually happened. But then that begs the question if we're really back to Cary and how it applies in this case. Isn't that really the threshold issue that we have to deal with? I don't know that if Cary applies might be the first question. Okay. Well, then we'll start there. And secondly, how do you apply, Cary, would be, I guess, the second question. Cary is, like I said, even if you apply it, even if you do, Cary doesn't say anything about not being able to prove damages from the actual denial of due process and the manner in which that was carried out. And that is all the evidence we put on. All we said was that the injury occurred, and we focused on those two days, and that that injury was so severe that it had a lasting effect. That's all we said. And the court argument was on that, and I even, I asked for an instruction in the beginning to limit damages. I asked for that. I said, let's just cut it off, done. Let's not even get into all this. And the court overruled my instruction. And the court said, no, because think of it. If you're in an excessive force situation, right, and so a guy, he's getting caught by the police or whatever, and he gets arrested, but he's lawfully arrested, but they use excessive force, well, excessive force, you still have a claim. If the injury from the excessive force, let's say it's a broken arm or something, well, you still have an effect more than just the day that they broke your arm. You're still going to have pain and suffering over some period of time. And the fact that it's a lawful arrest doesn't set that aside. And that's what the court used as a rationale. And I said, hey, you know, and it really was, it wasn't about me trying to assess damages when I said, let's just cut it off. It was about evidence in the case, and it had to do with the fact that I had to make decisions to settle with the county and avoid getting into long discussions about other evidence, and I made a decision to do that. And that was a litigation decision, just like the defense made their litigation decisions in here. And their litigation decision, I think if anything else, their litigation decision may be what caused the verdict being higher. But that's not our fault. And we didn't do anything wrong. And all we did was take advantage of their poor decisions, and that's what litigation is all about. They opened the door on that. And so, you know, and then getting what they wanted, like I said, they argued very clearly in their argument and in their questioning that if you focus on the warrant, the fact that they didn't get a warrant and you can't get any damage for separation, they got that argument in. Nobody objected. That argument was in front of the jury over and over and over again. The court in this case instructed the jury not only in writing, but I think eight times in the closing, again, that you cannot give damages for conduct not caused by these officers. You cannot give damages for the separation. He reminded the jury of that. And then he just in the end, because there was a larger number in his mind, said they must not have followed my instruction. That's it. They can't point to anything other than the number. You know, the problem I've got with this case and with your position, despite my sympathies with your having lost what was a wonderful victory the first time around, is we give a great deal of deference to a judge who says, you know, there's something about this trial that just didn't feel right to me. And obviously Judge White thought about this when he said, you know, something went wrong. And partly I think it was the size of the verdict that came back, and partly I think he did legitimately feel, and I'm inclined to agree with him, that his instruction under Kerry was probably wrong. You know, again, there's deference to the judge. The judge was there. You know, we were there, and all we could do is we can capture some little pieces of information to help bring you there. At the time when the argument was being made, following Mr. Watson's testimony in the direct testimony on damages. And the question was whether or not the door would be open into going to emotional distress. The judge at that time stated, on the record, in writing at the time, that there is a strong implication regarding the children and their personality changes, and their personality and how it was affected by this. There's a strong implication of damages there, and therefore we go into emotional distress. In his decision, when he figured out how are we going to get around this thing, he said, there was no evidence of any injury to the children. Well, how could there be a strong implication at one point in time when it serves the purpose of opening the door against the plaintiff, and yet when it's used the exact opposite way and say, hey, there's no evidence, when you're using it to set aside the verdict? Did you want to save? You have two minutes left if you want to save that time. Sure. Good morning. Cliff Greenberg for the defendants. Obviously, there was a lot going on in this trial. There were a lot of emotion in the trial, in both trials. There was a lot of issues to be decided. But I want to focus on where I thought this appeal was headed, which is, was the judge's determination that his jury instruction was wrong? Correct. And that's a legal issue. That's an issue that I assume gets decided de novo by this Court, although it has some context involved from the trial. It's really a legal issue. When police officers take children into custody without a warrant or an exigency, and there's a violation, but the State court then says there is sufficient evidence to keep these children separated from their family, what is the measure of damages? That's something we fought about from day one in this case, and it's still the dispositive issue in this case. Because if you agree that the judge got it wrong the first time, fixed the jury instruction, got it correct the second time, then everything that followed from that first trial was And it doesn't take much, as the Court I think is recognizing, to hear, to understand that if you do not say to a jury in this context, you may not award damages for the distress caused by the separation, which is what we said in the second trial. If you don't say that, you will get those damages assessed, and they did. And so once that determination is made by the Court, and I hope that it's made in our favor that the judge got it wrong. Let me get this straight. You didn't raise Kerry to the district court? Oh, yes, we did. You did? Yes. And did you approve the instruction given? In the first trial? First trial. Absolutely not. We fought over that tooth and nail. But was your objection based on It was this exact issue. This dividing line of where separation versus It was this exact issue over and over again. You cannot let them, I said, award damages due to the separation because the Court said that that was proper. And the judge didn't say that. Instead, what he said is you can't award damages after a certain date because the officers are not responsible for what happened on that date. A completely different thing. He was trying to get to the same limitation, but without the right information to the jury. And I think, I mean, that's, that's the deciding factor here that separates the second trial with enormous damages, a feeling of that the cops did something wrong, versus the second trial where there were reasonable damages and the jury decided that what the cops did may have been wrong, but it wasn't meriting the kind of punitive damages, any punitive damages. And that was the whole difference. Everything in this case centered around that issue in terms of what the instruction should say and, additionally, what evidence should come in. I mean, I lost on the evidence issue throughout. I always thought that the effect of the determination of the trial court, of the dependency court, where they said this is for the welfare of the children, we are keeping the kids away from their parents because there is a substantial risk of danger. If the jury heard that, which they never did, that it would have changed the way you think about what damages are attributable to what these police did. In any event, I believe that, and I think what I'm hearing is an agreement, that that issue is the threshold issue. Did the judge give the right instruction? And we haven't really discussed that. Well, I'm looking at, I think, is the instruction that he gave on damages. And it does draw a clear line between the conduct that the officers are responsible for and what happened by the State agent or State or county agency, whichever, county department, I guess, and by the juvenile court. Why isn't that sufficient? Well, the most important reason is because it didn't give the jury the direct command that you may not award damages for separation. What it just said is the police are not responsible for what happened. Without telling them what happened, it was extremely a confuse – it was an extremely confusing instruction. Even though the judge tried extremely hard to craft it correctly, it missed that one essential element. Well, actually, two essential elements. One, that the determination was made for the benefit, welfare of the children. In other words, that the court felt that there was potential harm if left with the parents. And two, that you don't get these damages caused by the separation. I mean, those are the two things. I think those are two different things. I'm not sure that the first, that carries – what is it that supports your first contention? That is, that you should get the benefit of the subsequent adjudication. My – my belief is that the jury could not understand what happened at the dependency proceeding and therefore assumed that forevermore, from the start to the finish, there was never enough evidence, never enough proof that there was a danger to these  And that's the thing that happened to them from then on, because the jury didn't know. No. Even the instruction in question says the actions taken by the Juvenile Dependency Court, which made an initial order on July 5 based upon the petition, that the children were to be detained, so on and so forth. And so the jury seems to be told, look, the court decided that the children should be detained, that the separation is okay as far as the court's concerned. Well, it does – I mean, it may not be as crisp and clear as – but nobody gets the instructions quite as crisp and clear as they might want. How does that fail to convey to the jury the concept that you say needed to be told to them? Because they were given the impression throughout that this whole system of dependency on the children, that they were to be virtually conspired to deprive them of their children, and without a statement saying, well, there was a standard that the court met, or, and or, that you can't give separation. I'm arguing kind of a subsidiary point on this issue. The more important part is the separation damages. I mean, clearly, that's what carries about, that's what I argued from the very – even before the first trial. I submitted an instruction saying no separation damages, and that was rejected. And that's what this case has always been about and continues to be about. And there is no apparent Ninth Circuit law on this issue. We cited all the cases that apply, carry to the various situations, including child dependency proceedings. And I think it's not only clear under the law, but it's clear as a matter of common sense, which is how I started, saying you can't give these damages for separation when it was proper. That was my common sense argument. Cary supported that in the context of constitutional claims analyzed in a – with a standard tort causation analysis. I mean, that's what Cary is. It's a causation case. But I was arguing the same thing even without Cary. As – so I think once the Court makes that determination, the rest of this case goes one way or another. It either goes away or then the Court – it goes away if the Court agrees that Cary – that under Cary the Court needed to give this instruction because it's not harmless, it's not de minimis. And the Court in Stature even said you need to give that or else you will risk the exact confusion that we had in this case. It's not harmless error. And if the Court agrees with that, the rest of it is tainted. There's no – there's no reason not to provide a new trial on all issues, which is what the judge did. If you disagree with me, then you have to get into these various questions about, well, where the damage is excessive. What's the standard of review on that? And there's a myriad of issues that we could discuss, but I don't think we have time for because I think the first issue is dispositive. I just want to address one – Let me just go back to – Yes. The only – well, the result of the Santa Clara County decision is that the children became separated, correct? They continued to be separated. Continued to be separated. Correct. So if you read the – you know, what the final jury instructions stated – Final in first trial or second trial? First trial because that's really what we're focusing on here. It does seem that the judge was trying to achieve exactly what he was also achieving in the second trial, was he not? Except for two things. One being some language telling the jury that there was some kind of a standard for that second court that was met. In other words, for the welfare of the children. I mean, I wanted other language. I wanted language that said they've decided that it would be a risk, a substantial risk of danger, which is also true, and I was arguing that, but he gave it a little softer language under the concept that the welfare of the children are involved in the second trial, not in the first one. And then the most important part, the one I think we're arguing about here today that the Court has to determine is he didn't say you may not award damages for the harm caused by the separation of these children from their family. And then he did in the second trial. That is – that's Carrie. That's what we're here for. That's the main point. It doesn't say anything about that. Why isn't that the same as saying you can't get damages for what the dependency people did? Because nobody had no idea what was going on in the dependency court. The jury didn't understand what that meant. It meant nothing to them. There was no evidence about it. There was no standard. There was no understanding that the Court took the same information that the cops had and said that constitutes a substantial danger to the children, even though they're – I mean, they weren't – it's clear they weren't looking at exigency. I know that. It doesn't – it doesn't go – it doesn't go backwards and say, ah, the cops had an exigency. They didn't. We're not fighting over that. But what it does do is say that the evidence, if not an exigency, was certainly sufficient in the judge's view to keep these children separated from their parents, and therefore you cannot give money for that. I couldn't argue that. I was not allowed to argue that. I was not allowed to say those words about separation. If you look – I tried. I wanted to say – I wanted to essentially say the cops got it right. The Court kept them based on the same information, and therefore you cannot give this money for the separation. I was not allowed to say that, or anything like it, because the judge decided that's not what the law was or that's not what the instructions are going to say or this – you know, he kept saying, well, the – the fact that it happened is relevant, but not why it happened. And I just disagreed with that. And he prevented me – and I think he realized it was unfair – from saying what I needed to say to properly limit damages in this case. And you were allowed to say it in the second trial? Absolutely. That was the – the instruction was – It changed, and I was allowed to argue in accordance with the instruction, which I did. As I said, there's a lot of other things. They're secondary. It's briefed. Unless the Court has any further questions, I'll sit down. Thank you. Thank you. You have two minutes for rebuttal. Point number one, what was just represented to the Court, it's not the record in this case. It's very clear in the record, if you look at – you know, and the instruction is not just the written instruction. If the Court speaks to the jury, that's an instruction. So if you take the instructions written plus what the Court says about the instructions during the course of the closing, those are instructions, too. Number one. Number two, he absolutely, absolutely got to argue about separation. It's not even a question. All you do is look at the record. What he's saying is not true. He kept raising the issue over and over again. He said it's the warrant. That's it. Just the warrant. No separation. They weren't responsible for the separation. He got his argument, and the Court backed it up because they said, you know what, you can only get it for what the police did and not from anything that happened from the filing of the petition in the Department of Family and Child Services. Because I want to get these points in. Here's what I'm seeing right here. If the Court, if this Court says it's about the instruction, if that's what we're about, if it's about the instruction, then how does that get us to passion and prejudice to set aside a punitive damage underlying finding? It doesn't get us there, ever. There was facts to support it. And if the focus is the instruction led to the damages, well, we still have the finding of punitive damages, and the Court was wrong, which is what we've always said anyway. So that's something that's a real dilemma, how you're looking at this. Well, how could the punitive damages stand if they're based on a foundation of actual damages premised on a wrong instruction? I'm accepting your premise here. I'm not saying the number. I'm saying the finding. Remember, he reversed the finding. Yeah, but it's a finding that they're entitled to punitive damages based on an understanding of what the officers can be held accountable for. That's incorrect. No. It's based on the officer's conduct. And that's all it's ever based on, is what the officer's conduct is. That's what the punitive damages flow. We know you can get punitive damages in a nominal damage case. So, I mean, it's about the conduct. It's not about, oh, it was separation or not. Number one, number two, I'm telling you, it belies the record. If you guys look at the record, you'll see that the argument that he's saying he was prohibited from making, he made over and over again. Do your briefs include references to what you're telling us now in terms of where you allege the defendant was allowed to get in the arguments the defendant says he was? I believe so. I believe so. But I can tell you right now, it's in the closing, and it's in the cross-examination of the witnesses on regarding damages. And it's there. He brought out what happened, what was the underlying basis for an order in juvenile court, and he brought out the fact that he very clearly, very clearly said that it's about them not getting a warrant. And he said them not getting a warrant is a very minimal thing when you look at this in the big picture of all these other horrific things that occurred to these people. That's what his argument was. Let me say, if we agreed with you, let's say that we agreed with the city on the first part, that the instruction round one was wrong, so there needed to be a retrial on that. But you're saying, well, that doesn't matter to my punitive damages, because there's some foundational basis in the first trial for the fact of punitive damages. Yeah. I'm sorry. Okay. So now I'm just trying to figure out how that would work as a practical matter. So if we credit your argument on the second part, then you're basically saying you wouldn't have had a retrial on punitive damages, and then the judge would have just looked at the punitive damages as legitimate and decided remitted or no remitted on the original punitive damages? I mean, how would it work as a procedural matter? I think he should have done as a remitter in this case to begin with. Right. But my premise says he's right on round one, on the instruction, and presumes you're right on the fact of punitive damages. How does that work? Then the jury, just like they did the second trial, viability was already found. Understood. Viability and also punitive damages would have been found already as far as the underlying question. And now it's just a matter of what are the damages for compensatory and what are the damages for punitive damages? And that was taken away from us. All right. I think we've got your argument in mind. Thank you very much. Thank you. I appreciate the argument of both counsel. Watson v. City of San Jose is submitted, and we're adjourned for the morning.
judges: McKeown, Fletcher, Clifton